UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR DANIEL AMADOR ANDRADE, (A203-477-853),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-02936-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. As explained below, the undersigned recommends that the petition be granted and that Petitioner receive a constitutionally-adequate bond hearing.

**I. Factual and Procedural History**

Petitioner is a 23-year-old citizen of Honduras with two U.S. citizen children. ECF No. 1 at 19-21. He entered the United States without authorization in 2019, when he was 15 years old. ECF No. 7 at 16. U.S. Customs and Border Protection (CBP) officials apprehended Petitioner shortly after his entry, intended to charge him administratively under 8 U.S.C. § 1182 (a)(6)(A)(i), but did not formally initiate removal proceedings, and released him.[1] Id. at 15.

[1] The record is unclear as to the circumstances of Petitioner's release, but based on Petitioner's age the time of entry and USCIS taking initial jurisdiction over his asylum application, it appears Petitioner was subject to the protections and detention procedures for juveniles under the Trafficking Victims Protection Act (TVPRA), 8 U.S.C. § 1232.

Petitioner filed an asylum application with U.S. Citizenship and Immigration Services (USCIS) on January 4, 2021.

On August 27, 2023, Petitioner was in a severe car accident in which he suffered significant physical and neurological injuries, including a stroke, skull fractures, and trauma to his lungs. ECF No. 1 at 1, 12, 39. He still suffers from pain and mobility issues and requires ongoing therapy and medication. Id. at 12. As a result of the accident, Petitioner was arrested and convicted of driving under the influence of alcohol (DUI). ECF No. 7 at 36. On September 15, 2024, Petitioner was arrested a second time for driving under the influence of alcohol. Id. at 26. He again pleaded guilty and was sentenced for both DUIs in June 2025. Id. at 25-57.

When Petitioner was released from county jail on December 23, 2025, U.S. Immigration and Customs Enforcement (ICE) took him into custody and initiated removal proceedings against him. Id. at 15, 16. On April 16, 2026, USCIS adjudicated Petitioner's asylum application and referred it to the Immigration Judge (IJ) for further review. ECF No. 7 at 45-47. That same day, an IJ denied Petitioner's request for bond redetermination. Id. at 54-55. The IJ found that she had no jurisdiction because Petitioner's entry without inspection subjects him to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Id. She made an alternative finding that Petitioner's DUI convictions make him a danger to the community. Id.

Petitioner filed the instant petition for writ of habeas corpus on April 20, 2026, claiming that his detention without a bond hearing violates his Fifth Amendment due process rights and the Immigration and Nationality Act. ECF No. 1. He also filed a motion for temporary restraining order ("TRO"), claiming that lack of adequate medical care in detention was causing irreparable injury. ECF No. 2. Judge Coggins ordered Respondent to address whether any factual or legal issues in this case materially distinguish it from Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026) and similar cases in which the Court has found that re-detention after a prior release violates due process. ECF No. 4. Respondent's opposition distinguished this case from the above-referenced cases by emphasizing that, here, Petitioner's

DUI arrests provided non-pretextual changed circumstances justifying re-detention. ECF No. 7. Respondent further claimed that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) and therefore not entitled to a bond hearing. Id. Respondent also argued that if § 1226(a) governs Petitioner's detention and entitles him to a bond hearing, the April 16, 2026 bond redetermination satisfied that requirement. Id. Judge Coggins, agreeing that the proper remedy for re-detention precipitated by a non-pretextual changed circumstance is a post-deprivation bond hearing, which Petitioner received, denied the motion for a TRO and referred the matter to the undersigned. ECF No. 8.

After appointment of counsel, Petitioner filed a supplemental brief arguing that he is not subject to § 1225(b)(2)(A) but rather the TVPRA and that his detention, which has become prolonged, violates his procedural and substantive due process rights. ECF No. 11.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that

government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**B. Statutory Immigration Framework**

"Where a [noncitizen] falls within [the] statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The relevant detention statutes potentially at issue here are 8 U.S.C. §§ 1225(b)(2), 1226(a), and 1232(c).

Under 8 U.S.C. § 1225, a noncitizen who arrives in the United States is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those

subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

The detention of "unaccompanied alien children" (UAC) – minors under 18 years old who have no lawful immigration status in the United States and no parent or legal guardian in the United States available to provide care and custody (6 U.S.C. § 279) – is governed by the Trafficking Victims Protection Reauthorization Act (TVPRA), codified in 8 U.S.C. § 1232. UACs are placed in the custody of the Secretary of Health and Human Services (HHS) in the "least restrictive setting that is in the best interest of the child" in consideration of any "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). If the UAC, after turning 18 years old, is transferred to the custody of the Department of Homeland Security, placement must still be in the "least restrictive setting available" after consideration of the noncitizen's danger to self, danger to the community, and risk of flight. 8 U.S.C. § 1232(c)(2)(B).

Noncitizens who are already present in the United States but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2), where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

## III. Analysis

### A. Statutory Authority

Respondent's position that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) because he entered the United States unlawfully is contrary to recent Ninth Circuit precedent. Noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026).

Petitioner argues that the government must follow the detention provisions of the TVPRA, codified in 8 U.S.C. § 1232, because Petitioner entered the United States as an UAC. The TVPRA requires that UACs be placed in the "least restrictive setting available after taking into account the [child's] danger to self- danger to the community, and risk of flight" and that

alternatives to detention be considered. 8 U.S.C. § 1232(c)(2)(A). However, Petitioner is no longer subject to the TVPRA. He is now over 18 years old. While § 1232(c)(2) states that former UACs that reach adulthood "shall be eligible" for alternatives to detention and placement in least restrictive setting, this provision only applies to youth "transferred from Department of Health and Human Services to Department of Homeland Security custody." 8 U.S.C. § 1232(c)(2)(B). The record is not clear as to the circumstances of Petitioner's release, but neither party claims that Petitioner remained in HHS or DHS custody beyond his eighteenth birthday. When ICE detained Petitioner in 2025, he had reached adulthood and was no longer subject to TVPRA protections.

The undersigned acknowledges that Petitioner was covered by the settlement agreement in J.O.P. v. U.S. Department of Homeland Security, No. 19-01944, 2020 WL 7489017 (D. Md., Dec. 21, 2020). However, the J.O.P. settlement does not affect Petitioner's detention. The J.O.P. lawsuit challenged the rescission of a previous policy that required USCIS to take initial jurisdiction over the asylum applications of former UACs in removal proceedings. Settlement Agreement, Doc. No. 199-2, J.O.P. v. DHS, No. 19-01944 (D. Md.), available at https://www.uscis.gov/sites/default/files/document/legal-docs/2024-JOP-settlementagreement%20%28final%29.pdf. Petitioner was able to apply for asylum with USCIS, who took initial jurisdiction of his asylum application, despite Petitioner turning eighteen. ECF No. 7 at 45-47. USCIS has now completed its adjudication of the asylum application and referred it to the Immigration Judge. Id. J.O.P. does not offer Petitioner additional protections. Because Petitioner was no longer a UAC and was placed in removal proceedings at the time of re-detention, § 1226(a) governs his detention.

**B. Due Process**

Noncitizens like Petitioner, who were previously detained and then released, have a protected liberty interest in their continued release, entitling them to due process protections. See e.g., Selis Tinoco, 2025 WL 3567862; Labrador-Prato, WL 3458802; D.L.C., 2026 WL 25511. Petitioner acquired a protected liberty interest when he was released in 2019. Having so found, the undersigned applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with

the Constitution.

**i. Private interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding detention after having been previously released. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner lived freely in the United States for over six years prior to his re-detention. During that time, he attended school, became the father to two U.S. citizen children, and applied for asylum and work authorization. ECF No. 1 at 19-21, 24-25, 31. The community ties he developed during release support his private liberty interest. See Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori v. LaRose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Petitioner also has a strong liberty interest in avoiding *prolonged* detention without a bond hearing to determine whether continued detention is justified. Petitioner has been detained for nearly eight months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, Petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted). Despite Petitioner being in custody for nearly eight months, there is no clear end date to the detention. According to the publicly-available Executive Office for Immigration Review (EOIR) case information portal, Petitioner's removal proceedings are pending but have not been scheduled for a hearing. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation. For these reasons, the first Mathews factor tilts in favor of Petitioner.

**ii. Risk of erroneous deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner, as his re-detention requires a bond hearing in which the burden of proof lies with the government.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G., 2025 WL 3254999, at *7 (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). Presumably, ICE determined that Petitioner did not pose a danger or risk of flight when they released him in 2019. 8 U.S.C. § 1225(b)(2)(A). Respondent claims that the subsequent detention was based on changed circumstances. Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody hearing to determine whether there is any valid basis for detention. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). A neutral adjudicator should determine whether the changed circumstances justify re-detention. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.") (abrogated on other grounds).

Here, Petitioner did receive something of a post-deprivation bond hearing on April 16, 2026. There, the IJ found a lack of jurisdiction and only addressed the merits of Petitioner's detention in the alternative. However, that bond hearing was insufficient to protect Petitioner's liberty interests because it placed the burden of proof on Petitioner, rather than on the government. The IJ conducted the hearing pursuant to 8 C.F.R. § 1236, which places the burden on the noncitizen to demonstrate that he does not present a danger to the community or risk of flight. Matter of R-A-V-P-, 27 I&N Dec. 803, 804 (BIA 2020), citing Matter of Fatahi, 26 I&N Dec. 791, 795 n.3 (BIA 2016); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006). Where, as here, the government alleges circumstances have changed such that re-detention is necessary, the appropriate remedy is a hearing in which the *Respondent* must demonstrate that the changed

circumstances render Petitioner a flight risk or danger to the community. Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK (HC), 2026 WL 253627 (E.D. Cal. Jan. 31, 2026). Petitioner has not received such remedy.

**iii. Government's interest**

Under the third Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). However, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without an adequate bond hearing. Thus, providing a bond hearing where the government bears the burden "would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). Therefore, the government's interest in detaining Petitioner without a hearing to demonstrate that he poses a danger or risk of flight is low. An additional bond hearing in which the government bears the burden of proof would involve a minimal fiscal and administrative burden. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without demonstrating that the detention is necessary to protect the community or ensure Petitioner's appearance. The undersigned thus finds that Petitioner's current detention violates his Fifth Amendment due process rights and requires a bond hearing at which the government bears the burden of proof.

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that

1. Petitioner's application for a writ of habeas corpus be GRANTED;
2. Respondent be ordered to provide Petitioner with a constitutionally adequate bond hearing before an Immigration Judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of any order resolving the § 2241 petition.
3. Respondent provide Petitioner notice of any such bond hearing at least seven (7) days in advance of the hearing.
4. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.
5. If Petitioner is granted release on bond, Respondent shall return all of Petitioner's documents and possessions at the time of release.
6. Any order not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of the final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal

////

////

////

the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE